■ NANCY ESTES et al., Respondents, v NEW YORK STATE SADDLE HORSE ASSOCIATION, INC., et al., Appellants.—Crew III, J. Appeal from an order of the Supreme Court (Best, J.), entered August 15, 1991 in Fulton County, which denied defendants' motions for summary judgment dismissing the complaint.

On May 29, 1988, defendant Fulton County Horse Council (hereinafter FCHC), a member organization of defendant New York State Saddle Horse Association, Inc. (hereinafter NYS-SHA), sponsored a horse show at premises owned by defendant Dusty Boots Riding Club, Inc. (hereinafter DBRC) in the Town of Pattersonville, Schenectady County. Entry to the property is gained via a dirt road approximately 500 yards long; the road is banked by grassy underbrush on both sides and ultimately empties into a parking area. Plaintiffs arrived at the grounds at approximately 7:30 A.M., paid an admission fee and eventually decided to park their truck and horse trailer on the right-hand side of the entrance road facing out toward the main highway. After completing the entry form and paying the registration fee, plaintiff Nancy Estes unloaded her horse, walked him around the grounds and then returned to the trailer and allowed the horse to graze. During this time, Estes was holding the horse's lead line which, in turn, was attached to his halter.

At approximately 8:00 A.M. Anne Marie Mormile, another entrant in the competition, drove her truck and trailer onto DBRC property. As Mormile proceeded down the entrance road, defendant Steven P. Staley followed behind the truck and trailer on his motorcycle. According to Estes, she heard a loud noise coming from the direction of the entrance and, fearing that her horse would be spooked, brought the horse closer to the road so that he would be able to see what was producing the noise. As Staley approached Estes and her horse, he observed that the horse was nervous and, concerned

that the horse would enter his path, pulled to the opposite side of the road, disengaged the clutch and began to stop. As the horse spotted the motorcycle, however, he shied, tried to run, knocked Estes to the ground, reared and landed on Estes' right knee, causing her to sustain serious injuries.

Plaintiffs subsequently commenced this negligence action and asserted a derivative cause of action against defendants. Following discovery, NYSSHA and DBRC moved for summary judgment dismissing the complaint and Staley and FCHC cross-moved for the same relief. Supreme Court denied the motions, finding that questions of fact remain. Defendants now appeal.

It is well settled that "[a]s a general rule, a defendant has no legal duty to control the conduct of third persons so as to prevent them from harming others * * *. However, certain relationships may give rise to such a duty, but then only when the defendant has the ability and authority to control the third persons' conduct" *(Conboy v Mogeloff,* 172 AD2d 912, 913, *lv denied* 78 NY2d 862 [citation omitted]; *see, Purdy v Public Adm'r of County of Westchester,* 72 NY2d 1, 8; *D'Amico v Christie,* 71 NY2d 76, 88; *Pulka v Edelman,* 40 NY2d 781, 783). As the proponent of a motion for summary judgment, NYSSHA bore the burden of making "a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" *(Alvarez v Prospect Hosp.,* 68 NY2d 320, 324; *see, Graff v Amodeo,* 178 AD2d 901, 902). To that end, it is averred that "NYSSHA's only connection to this action is that [FCHC], the horse show sponsor and organizer, was a member of [NYSSHA]" and, further, that NYSSHA neither sponsored the show in question nor retained control over FCHC or the individual show participants. This proof, however, coming in the form of an attorney's affidavit, which does not attach documentary support relevant to NYSSHA's relationship with FCHC or provide information to establish personal knowledge, is insufficient to meet NYSSHA's burden on a motion for summary judgment *(see, Del Giacco v Noteworthy Co.,* 175 AD2d 516, 517). Accordingly, NYSSHA's motion for summary judgment was properly denied.

With respect to DBRC, we recognize that "an out-of-possession owner-lessor is not liable in negligence for conditions upon the land after transfer of possession and control" *(Del Giacco v Noteworthy Co., supra,* at 516; *see, De Brino v Benequista & Benequista Realty,* 175 AD2d 446, 447; *Lynch v Lom-Sur Co.,* 161 AD2d 885, 886), unless the landowner re-

tains control over the premises during the relevant time, is contractually obligated to repair unsafe conditions or creates a dangerous condition *(see, Del Giacco v Noteworthy Co., supra,* at 518; *Lafleur v Power Test Realty Co. Ltd. Partnership,* 159 AD2d 691, 692). Although DBRC's motion for summary judgment was supported by the examination before trial testimony of its vice-president, Robert MacArthur, MacArthur's testimony does not shed any light on the actual arrangements existing between DBRC and FCHC on the day of the accident. MacArthur testified that the usual practice was for there to be an agreement between DBRC and anyone who leased the property and for DBRC to charge a $100 to $200 fee for use of the grounds. MacArthur further testified that a DBRC member may have attended the horse show "as a courtesy" and that the concession stand maintained on the property by DBRC may have been operating on the day of the accident. It would be utter speculation to conclude from that testimony that the premises were leased without retention of any possession or control *(compare, Del Giacco v Noteworthy Co., supra,* at 517) and, hence, DBRC's motion for summary judgment was properly denied.

Turning to FCHC's cross motion for summary judgment, FCHC argues that plaintiffs' action against it must fail because (1) Estes executed a release relieving FCHC of liability, (2) Estes assumed the risk in moving her horse closer to the road upon hearing the noise allegedly generated by Staley's motorcycle, and (3) the presence of Staley's motorcycle was not the proximate cause of plaintiffs' injuries. We cannot agree. " 'Releases from liability for negligence are closely scrutinized and strictly construed, and a release general in its terms will not bar claims outside the parties' contemplation at the time it was executed' " *(Long v State of New York,* 158 AD2d 778, 781, quoting *Beardslee v Blomberg,* 70 AD2d 732, 733). Here, the release executed by Estes stated, "In consideration of competing as a contestant for prizes in the Horse Show * * * I/We do hereby release [FCHC] from any & all claims for injuries or damages which may be sustained by me or my mount by reason of such participation." We are unable to conclude, as a matter of law, that the phrase "by reason of such participation" encompasses the events leading up to Estes' accident or that the particular danger to which Estes was allegedly exposed was within the parties' contemplation at the time Estes executed the release. We are also of the view that a triable issue of fact exists regarding the proximate cause of Estes' injuries and whether the risk Estes encoun-

tered in bringing her horse closer to the road and the source of the noise was known or apparent to her *(see, Brancati v Bar-U-Farm,* 183 AD2d 1027). Accordingly, FCHC's cross motion for summary judgment was properly denied.

With regard to Staley, we reach a different conclusion. The complaint alleges negligence from Staley's operation of his motorcycle in an area where horses were being kept and in close proximity to the spot where Estes was standing with her horse. In her bill of particulars, Estes characterizes Staley's action as creating a hazardous and dangerous condition. The undisputed facts, however, reveal that Staley drove his motorcycle to the horse show and entered the parking area of the show directly behind the horse trailer and truck that was being driven by Mormile. Staley followed the Mormile vehicle, which was proceeding at a speed of 3 to 4 miles per hour. There is no claim by anyone that the motorcycle was excessively noisy (in fact it was idling most of the time), speeding or being operated erratically in any manner. As the Mormile vehicle, followed by the Staley motorcycle, approached Estes, who was grazing her horse on a lead rope, the horse looked up in reaction to the noise of what Estes thought was the Mormile vehicle. The motorcycle behind the trailer was not then visible to Estes. It was not until the truck and trailer passed Estes that the motorcycle became visible. As soon as the horse saw the motorcycle it shied and tried to run away, striking Estes and knocking her down.

In the uncontroverted circumstances of this case, Estes has alleged no cause of action in negligence against Staley, for Estes has demonstrated no breach of any duty that Staley owed to her *(see, Akins v Glens Falls City School Dist.,* 53 NY2d 325; *Purdy v Public Adm'r of County of Westchester,* 127 AD2d 285, *affd* 72 NY2d 1, *supra).* Staley had no experience with or knowledge of horses; this was his first horse show and no one questioned his entry to the show on his motorcycle. No signs or other warnings were posted prohibiting the entry of motorcycles, and Staley's motorcycle was at all times being operated in a careful and prudent manner and displayed nothing out of the ordinary to alarm the horse. Without more, there is no issue of negligence shown on Staley's part. The mere act of driving his motorcycle on the grounds in close proximity to an unknown horse, as the complaint alleges, does not present an issue of negligence, as a matter of law. Therefore, plaintiffs have demonstrated no viable cause of action against Staley and the action against him should be dismissed.

Mikoll, J. P., Yesawich Jr., Mercure and Casey, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendant Steven P. Staley's cross motion for summary judgment; said cross motion granted; summary judgment awarded to said defendant and complaint dismissed against him; and, as so modified, affirmed.